UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BOBBI ALEXANDRIA
CONSTANTINE,

                                        Plaintiff,

          v.                                              9:17-CV-0661

RENSSELAER COUNTY JAIL,
RENSSELAER COUNTY, CHIEF
HETMEN, Chief of Rensselaer
County Jail, SHERIFF RUSO,
Sheriff of the Rensselaer County
Jail, SGT. BULNES, Rensselaer
County Jail, SGT. MORIN,
Rensselaer County Jail, SGT. BATES,
Rensselaer County Jail, L.T. SAUER,
Rensselaer County Jail, L.T. REKIN,
Rensselaer County Jail, OFFICER
SINDE, Rensselaer County Jail,
CAPTAIN DUNHAM, Rensselaer
County Jail, SGT. HOGLE,
Rensselaer County Jail, SGT.
MACHINA, Rensselaer County Jail,
UNDERSHERIFF BLY, Rensselaer
County Jail, SGT. GESEWICZ,
Rensselaer County Jail, OFFICER
KELLEY, Rensselaer County Jail,
SGT. RANDELL, OFFICER S.
SIMMONS, Rensselaer County Jail,
OFFICER ECONIMELDES,
Rensselaer County Jail, OFFICER
DILLENBECK, Rensselaer County
Jail, JOHN/JANE DOE, Unnamed
Officer, Rensselaer County Jail,
JOHN DOES 1-2, Rensselaer County
Jail, and JOHN/JANE DOES 1-15,
Unnamed Officers and Staff Personnel,
Rensselaer County Jail,

                                        Defendants.

---

APPEARANCES:

BOBBI ALEXANDRIA CONSTANTINE
Plaintiff, pro se
Rensselaer County Jail
4000 Main Street
Troy, NY 12180

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

## I. <u>INTRODUCTION</u>

Plaintiff Bobbi Alexandria Constantine ("Constantine" or "plaintiff") commenced this civil rights action pro se in June 2017.  Dkt. No. 1.

On August 30, 2017, Constantine filed an amended complaint as of right pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which is now the operative pleading in this action.  Dkt. No. 11 ("Am. Compl.").[1]

Constantine, who is presently confined at Rensselaer County Jail, has not paid the filing fee for this action and seeks leave to proceed in forma pauperis.  Dkt. No. 7 ("IFP Application").[2]  Plaintiff also seeks appointment of pro bono counsel.  Dkt. No. 3.

## II. <u>IFP APPLICATION</u>

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v.*

---

[1]  The Clerk of the Court is directed to revise the docket to add "Officer R. Weaver" as a defendant in this action.  *See* Am. Compl. at 2.

[2]  On June 20, 2017, this action was administratively closed because Constantine failed to submit a completed and certified application for in forma pauperis status along with an inmate authorization form.  *See* Dkt. No. 4.  The case was reopened on July 27, 2017, upon receipt from plaintiff of her IFP Application, and plaintiff was afforded a further opportunity to submit the required inmate authorization form.  *See* Dkt. Nos. 8, 9.

*Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[3]  "Although

an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must

subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from

his inmate accounts."  *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607

F.3d 18, 21 (2d Cir. 2010)).

Upon review of Constantine's IFP Application, she has demonstrated sufficient

economic need.  Plaintiff has also filed the inmate authorization required in the Northern

District of New York.  Dkt. No. 10.  As a result, plaintiff's IFP Application is granted.

## III.  SUFFICIENCY OF THE AMENDED COMPLAINT

### A.  Standard of Review

In light of the fact that Constantine was granted leave to commence this action in

forma pauperis, and because the amended complaint seeks relief from a governmental

agency and its officers and employees, the sufficiency of the allegations set forth in the

amended complaint must be considered in light of 28 U.S.C. § 1915(e) and 28

U.S.C. § 1915A.

Section 1915(e)(2) directs that, when a plaintiff seeks to proceed in forma pauperis,

"(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the

action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted;

or (iii) seeks monetary relief against a defendant who is immune from such relief."  28

---

[3]  Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  28 U.S.C. § 1915(g).  Based upon a review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

U.S.C. § 1915(e)(2)(B).

Similarly, Section 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (i) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (ii) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

Thus, although courts have the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), courts also have a responsibility to determine whether plaintiff may properly proceed with this action.

A court should not dismiss a complaint if a plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although a court should construe the factual allegations in the light most favorable to

4

the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B.  <u>Summary of the Amended Complaint</u>

The following facts are set forth as alleged by Constantine in the amended complaint.  Plaintiff has been confined at Rensselaer County Jail ("RCJ") since September 2016.  Am. Compl. at 1.[4]  Throughout her confinement, plaintiff has been discriminated against, harassed, and mistreated because she is "transgender and deaf."  *Id.*  Among other things, defendants intentionally fail to call plaintiff "by the right pronouns" in order to cause plaintiff mental anguish.  *Id*. at 3-4.  Defendants also joke about plaintiff for their own entertainment.  *Id*.

Upon arrival at RCJ on September 13, 2016, Constantine was told "to remove all of her clothes because the jail has to see her genitals."  Am. Compl. at 5.  Over the next several months, plaintiff was repeatedly required to show her genitals to staff for no legitimate purpose.  *Id*.  A video camera is pointed at plaintiff's cell in such a manner that she is observed dressing and undressing and using the bathroom.  *Id*.

---

[4]  It appears that plaintiff was confined at RCJ as a federal pretrial detainee.  *See United States v. Constantine*, No. 1:16-CR-0366 (TJM) (N.D.N.Y. Sept. 13, 2016) (Order of Stewart, M.J., denying Constantine's request for release and setting detention hearing).  On August 21, 2017, plaintiff was sentenced to time served and three years of supervised release.  *See United States v. Constantine*, 1:16-CR-0366 (TJM) (N.D.N.Y. Aug. 21, 2017) (Judgment ).

C.O. Sinde, C.O. Weaver, and C.O. Econimeldes disclosed Constantine's personal and medical information to other staff and inmates on numerous occasions. Am. Compl. at 4. These disclosures were made simply to embarrass or humiliate plaintiff. *Id*. Plaintiff was improperly and/or unnecessarily identified as transgender "on the housing unit inmate sheet so that anyone can see it." *Id*. at 6.

Lt. Sauer, Lt. Rakin, Chief Hetman, Sheriff Russo, Undersheriff Bly, and Capt. Dunham denied Constantine access to an interpreter for "programs, church and visit and for hearings as well as medical meeting and appts. or meeting with the staff at the Jail." Am. Compl. at 4.

On May 23, 2017, Lt. Sauer came to the dorm and met with every inmate except Constantine. Am. Compl. at 4. Plaintiff was unable to participate without an interpreter. *Id*.[5]

Constantine also made requests for mental health care that were denied. Am. Compl. at 5, 8. Plaintiff was told that "she would not be getting [any] mental health services." *Id*. at 6, 8.

On June 15, 2017, C.O. Weaver denied Constantine her scheduled telephone call with her lawyer. Am. Compl. at 7. When plaintiff complained, C.O. Weaver denied her a shower. *Id*.

On June 26, 2017, Lt. Sauer wrote a false misbehavior report against Constantine. Am. Compl. at 8. The misbehavior report was written the same day that Lt. Sauer learned that plaintiff had filed this lawsuit naming Lt. Sauer as a defendant. *Id*.[6]

[5] Plaintiff later learned that the other inmates were sharing their "concerns" about being housed with plaintiff. Am. Compl. at 4.

[6] Plaintiff's initial complaint, dated June 12, 2017, was received for filing on June 19, 2017. Dkt. No. 1.

6

Construed liberally, the amended complaint asserts claims for the violation of Constantine's constitutional rights protected under the First and Fourteenth Amendments to the U.S. Constitution, as well as under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 42 U.S.C.).[7]

In addition to C.O. Sinde, C.O. Weaver, C.O. Econimeldes, Lt. Sauer, Lt. Rakin, Chief Hetman, Sheriff Russo, Undersheriff Bly, and Capt. Dunham, the amended complaint names Rensselaer County, RCJ, ten members of the RCJ corrections staff, and "15 unnamed officers and persons" employed at RCJ as defendants in this action.  Am. Compl. at 1-2.

Constantine seeks an award of damages as well as injunctive relief.  Am. Compl. at 10.  For a complete statement of plaintiff's claims and the facts she relies on in support of those claims, reference is made to the amended complaint.

**C.  Analysis**

Constantine seeks relief for violation of her constitutional rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which "provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).[8]

---

[7] Plaintiff's claims are set forth in ten separate causes of action (numbered one through six and eight through eleven).  Am. Compl. at 3-9.  The Sixth and Tenth Causes of Action are virtually identical, as are the Eighth and Eleventh Causes of Action.  Every attempt has been made to determine the legal basis for each cause of action; duplicative claims will be considered together.

[8] The sufficiency of plaintiff's statutory ADA and HIPAA claims is addressed below.

The personal involvement of a defendant is a prerequisite for the assessment of liability in a Section 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable to these claims. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

"Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim." *Ying Li v. City of New York*, No. 15-CV-1599, 2017 WL 1208422, at *6 (E.D.N.Y. Mar. 31, 2017).

### 1. Dismissal of Certain Defendants

### a. Rensselaer County Jail

In *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), the Supreme Court ruled that "municipalities and other local government units" are "persons" within the meaning of Section 1983. *Id.* at 690.

"A municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. 658). Local governments "are not vicariously liable under § 1983 for their employees' actions;" rather "local governments are responsible only for 'their own illegal acts.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality;

(2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Danielak v. City of N.Y.*, No. 02-CV-2349, 2005 WL 2347095, at *14 (E.D.N.Y. Sept. 26, 2005), *aff'd*, 209 Fed. App'x 55 (2d Cir. 2006).

However, it is well-settled that municipal departments and offices which have no separate legal identity and cannot sue or be sued are not "persons" under Section 1983. *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (affirming the district court's dismissal of claims against the NYPD as a non-suable entity); *Sanchez-Martin v. Allegany Cnty. Jail*, No. 11-CV-0568, 2012 WL 360014, at *2 (W.D.N.Y. Feb. 1, 2012) (holding that county correctional facilities do not have legal identities separate and apart from the counties and are not subject to suit under Section 1983).

Here, Constantine's claims are not cognizable against RCJ because it is not a "person" for purposes of Section 1983. As a result, RCJ is dismissed with prejudice as a defendant in this action.

### b. __Sgt. Bulnes, Sgt. Morin, Sgt. Bates, Sgt. Gesewicz, Sgt. Machina, Sgt. Hoggle, C.O. Kelly, Sgt. Randell, C.O. Simmons, C.O. Dillenbeck, and John/Jane Doe 1-15__

As noted above, the personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983.

9

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007); *Crown v. Wagenstein*, No. 96 CIV. 3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York,* 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

Upon review of the amended complaint, Sgt. Bulnes, Sgt. Morin, Sgt. Bates, Sgt. Gesewicz, Sgt. Machina, Sgt. Hoggle, C.O. Kelly, Sgt. Randell, C.O. Simmons, and C.O. Dillenbeck are not mentioned anywhere in the body of the pleading. *See* Am. Compl.  Nor does the amended complaint make any mention of any of the fifteen "Doe" defendants.[9]

Stated otherwise, Constantine has not alleged any facts regarding these defendants which even suggest that they were personally involved in any of the misconduct complained of.  Therefore, the amended complaint is dismissed without prejudice as against these defendants.

### 2.  Remaining Claims

### a.  Verbal Abuse and Harassment

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the [Fifth or] Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

---

[9]  While it is not inappropriate to refer to a defendant whose identity is not known to the plaintiff as "John or Jane Doe," the complaint must set forth allegations of fact sufficient to plausibly suggest that the Doe defendant(s) engaged in specific acts of wrongdoing in order for claims against them to survive initial review.

Unlike a convicted prisoner, a pretrial detainee may not be punished in any manner,
"whether through the use of excessive force, by deliberate indifference to conditions of
confinement, or otherwise." *Darnell*, 849 F.3d at 35.  The Second Circuit concluded in
*Darnell* that "deliberate indifference should be defined objectively for a claim of a due
process violation." Id.

"It is well established that § 1983 is not intended to represent a code of professional
conduct for government officials and that verbal harassment alone is insufficient to support a
constitutional claim." *Feldman v. Lyons*, 852 F. Supp. 2d 274, 280 (N.D.N.Y. 2012).  In other
words, "verbal harassment or profanity alone, unaccompanied by an injury no matter how
inappropriate, unprofessional, or reprehensible it might seem, does not constitute the
violation of any federally protected right and therefore is not actionable under 42
U.S.C. § 1983." *Moncrieffe v. Witbeck,* No. 97-CV-253 (NAM/DRH), 2000 WL 949457, at *3
(N.D.N.Y. June 29, 2000)  (quoting *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 474
(S.D.N.Y. 1998)).

It is true that, under certain circumstances, a prison official's infliction of psychological
pain on an inmate may constitute an Eighth or Fourteenth Amendment violation; however, to
do so, the psychological pain must be (1) intentionally inflicted and (2) more than de minimis
in nature." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 490-91 (N.D.N.Y. 2009).

Constantine alleges that she has been subjected to ongoing verbal abuse and
harassment by RCJ staff.  *See* Am. Compl. at 3-4 (First Cause of Action).  More specifically,
plaintiff states that defendants "fail[ed] to call plaintiff by the right pronouns," and instead
referred to her as "it or freak and he or him." *Id*. at 3.  Plaintiff was often made the subject of

11

jokes, and experienced "significant pain physical and emotional harm." *Id*.

Upon review, and with due regard for Constantine's status as a pro se litigant, plaintiff has not alleged facts sufficient to plausibly suggest that the verbal harassment complained of gives rise to cognizable Fourteenth Amendment claims. While the Court does not condone mistreatment of any kind, in the absence of factual allegations describing the offensive comments and "jokes" plaintiff was subjected to, providing dates and/or stating the frequency of these remarks, and describing the psychological injury or any physical manifestations thereof which she claims to have suffered,[10] the name-calling and use of incorrect pronouns does not suffice.

Significantly, because this claim is asserted in wholly conclusory terms against "[a]ll of the listed defendants," and without specific mention of any of the thirty-four individual defendants, this claim does not survive initial review. "Group pleading is insufficient for purposes of Rule 8(a)(2) [of the FRCP] which requires a short and plain statement of the claim showing that the pleader is entitled to relief." *Wright*, 2015 WL 5316410, at *13.

Based upon the foregoing, Constantine's claims of verbal abuse and harassment set forth in the First Cause of Action are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

**b. <u>Confidential Medical Information</u>**

The Supreme Court has recognized that the right to privacy protects against disclosure of personal matters such as one's medical condition. *Whalen v. Roe*, 429 U.S.

---

[10] The amended complaint does not allege that defendants inflicted any physical injury on plaintiff in conjunction with their verbal abuse and harassment, or that they threatened to do so.

589, 598-600 (1977); *see also Doe v. City of N.Y.*, 15 F.3d 264, 267 (2d Cir. 1994).

The Second Circuit has extended this protection to prisoners unless (i) the disclosure of the prisoner's medical information was reasonably related to legitimate penological interests or (ii) the medical information at issue was not the type of sensitive medical information contemplated by the courts for constitutional protection. *See Powell v. Schriver*, 175 F.3d 107, 111-13 (2d Cir. 1999).

"The privacy interest is at its zenith when the prisoner suffers from an 'unusual' condition, such as HIV or transsexualism, that is 'likely to provoke an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others.'" *Shuler v. Brown*, No. 07-CV-0937 (TJM/GHL), 2009 WL 790973, at *5 (N.D.N.Y. Mar. 23, 2009) (quoting *Powell*, 175 F.3d at 111). Where the medical information is spread through "humor or gossip," it is more likely that the inmate's right to privacy will have been violated. *Id*.

Here, Constantine claims in the Second Cause of Action that C.O. Sinde, C.O. Weaver, and C.O. Econimeldes disclosed her personal and medical information to other staff and inmates without justification, and in order to embarrass or humiliate plaintiff. Am. Compl. at 4. Plaintiff also claims (in the Eighth and Eleventh Causes of Action) that she was improperly and/or unnecessarily identified as transgender on the housing unit inmate sheet "so that anyone can see it." *Id*. at 6, 8.

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), a response to Constantine's claims arising from the improper disclosure of her

confidential medical information (set forth in the Second Cause of Action) is required from

C.O. Sinde, C.O. Weaver, and C.O. Econimeldes.

However, because Constantine has not identified one or more of the defendants who

is alleged to have been personally involved in making the unwarranted disclosure on the

inmate housing sheet, the claims set forth in the Eighth and Eleventh Causes of Action

stemming from that disclosure are dismissed without prejudice for failure to state a

claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

It has also been considered whether Constantine's claims (set forth in the Second,

Eighth, and Eleventh Causes of Action) that the unwarranted disclosure of her confidential

medical information violated her rights protected under HIPAA are cognizable in this action.

HIPAA regulates the privacy of medical records; the statute authorizes the Secretary

of Health and Human Services ("HHS") to make "final regulations concerning the privacy of

individually identifiable health information."  *Nat'l Abortion Fed'n v. Ashcroft,* No. 03 Civ.

8695, 2004 WL 555701, at *2 (S.D.N.Y. Mar. 19, 2004).  HIPAA provides for an enforcement

mechanism for HHS.  *Id.* at *6.

Thus, although HIPAA authorizes a monetary remedy for the wrongful disclosure of

medical information, *see* 42 U.S.C. § 1320d-6, the statute "does not confer a private cause of

action . . . [or] either explicitly or implicitly, confer to private individuals a right of

enforcement."  *Bruno v. CSX Transp., Inc.*, 262 F.R.D. 131, 134 n.3 (N.D.N.Y. 2009).

Because there is no private cause of action granted by the statute, Constantine

cannot maintain her claims pursuant to HIPAA.  Based upon the foregoing, plaintiff's claims

seeking relief under HIPAA (set forth in the Second, Eighth, and Eleventh Causes of Action)

are not cognizable in this action and are dismissed with prejudice.  *See* 28

U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### c. Denial of Access to an Interpreter

To state a prima facie claim under the ADA, a plaintiff must adequately plead

that (1) he or she is a qualified individual with a disability; (2) that he or she was excluded

from participation in a public entity's services, programs or activities or was otherwise

discriminated against by a public entity; and (3) that such exclusion or discrimination was due

to a disability.  *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).[11]

In so doing, a plaintiff may rely upon a "reasonable accommodation" theory.  *See*

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003).  A "reasonable

accommodation" must provide effective access to prison activities and programs.  *Wright*,

831 F.3d at 73 (citing *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (holding a

deaf inmate's "limited participation" in activities does not support a finding that although he

did not have an interpreter, he "enjoyed meaningful access")).

At the very early stages of this action and mindful of the Second Circuit's direction that

a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff*, 537 F.3d at

191, a response will be required from Rensselaer County to Constantine's claim (set forth in

the Third Cause of Action) that she was routinely denied "meaningful access" to services,

programs, and activities at RCJ to which she was "legally entitled" in violation of the ADA.

However, insofar as Constantine asserts claims for the denial of her constitutional

rights stemming from her lack of access to an interpreter, these claims do not survive initial

---

[11]  Individual defendants can only be sued under the ADA in their official capacities for prospective injunctive relief.  *Harris v. Mills*, 572 F.3d 66, 72-73 (2d Cir. 2009).

review.

"[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)).

Here, Constantine has not identified any of the individual defendants as having been personally involved in the alleged wrongdoing, nor has she set forth in the amended complaint factual allegations sufficient to plausibly suggest the existence of policies, practices or customs, formal or otherwise, or acts that may fairly be said to represent official policy of Rensselaer County, which deprived plaintiff of a constitutional right during her confinement at RCJ.  As a result, plaintiff's constitutional claims arising from the denial of an interpreter (set forth in the Second, Eighth, and Eleventh Causes of Action) are dismissed without prejudice for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### d.  Privacy

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court stated that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."  *Id*. at 527-28.

After holding that prisoners do not have a reasonable expectation of privacy from searches and seizures enabling them to invoke the protections of the Fourth Amendment, the Supreme Court remarked that a prisoner could use the Eighth Amendment to overcome "calculated harassment unrelated to prison needs."  Hudson, 468 U.S. at 530; *see Johnson*

16

*v. Phelan*, 69 F.3d 144, 146-47 (7th Cir. 1995) (finding plaintiff's claim that male prisoners are entitled to prevent female guards from watching them while undressed does not present the sort of claim that *Hudson* holds in reserve.).

Numerous courts have recognized that an inmate's right to privacy does not "vanish altogether" when he or she enters the prison gate, although it "must yield to a penal institution's need to maintain security. *Jean-Laurent v. Lawrence*, No. 12 Civ. 1502, 2013 WL 1129813, at *8 (S.D.N.Y. Mar. 19, 2013) (quoting *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982)).

Shielding one's unclothed figure from the view of strangers is "impelled by elementary self-respect and personal dignity." *Jean-Laurent*, 2013 WL 1129813 at *8 (quoting *Michenfelder v. Sumner*, 860 F.2d 328, 333-34 (9th Cir. 1988)).  In *Jean-Laurent*, the Court noted that "'recent cases in this Circuit and elsewhere addressing inmates' right to privacy suggest that occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex' - which would include possible glimpses on the way to the shower - 'may be permissible.'"  *Id*. (quoting *Correction Officers Benev. Ass'n of Rockland Cnty. v. Kralk*, No. 04 Civ. 2199, 2011 WL 1236135, at *11 (S.D.N.Y. Mar. 30, 2011).

Upon review, and even assuming that the truth of the allegations that she was repeatedly and unjustifiably required to "show her genitals [to] staff," and that a video camera was positioned outside of her cell in a way that deprived her of privacy while dressing and undressing and using the toilet (set forth in the Fourth and Fifth Causes of Action) plausibly suggest that her constitutional rights were violated, Constantine's failure to allege the personal involvement of one or more of the named defendants in this misconduct requires

17

dismissal of these claims. Here again, plaintiff alleges wrongdoing by defendants without differentiation and, as a result, these claims do not survive initial review.

Based upon the foregoing, plaintiff's claims asserted in the Fourth and Fifth Causes of Action are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### e. Equal Protection

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Constantine alleges (in the Fourth and Fifth Causes of Action) that the requirement

that she display her genitals and the positioning of a video camera outside of her cell give rise to a cognizable Equal Protection claim.  *See* Am. Compl. at 5.

Upon review, because Constantine has not identified any defendant(s) as the persons involved in or responsible for these actions, the amended complaint affords no basis upon which the Court could conclude that plaintiff has alleged a viable Equal Protection claim.[12] As a result, plaintiff's Equal Protection claims (set forth in the Fourth and Fifth Causes of Action) are dismissed without prejudice for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### f. Denial of Mental Health Care

A plaintiff claiming the denial of proper and adequate medical care must satisfy a two-pronged test.  First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'"  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)).  Second, the defendant(s) must have acted with deliberate indifference, or a "sufficiently culpable state of mind."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).

After *Darnell*, a plaintiff suing under the Fourteenth Amendment must show that the prison official acted with objective recklessness, or that the defendant "knew, or should have known" that "an excessive risk to health or safety" would result.  *See Darnell*, 849 F.3d at 35.  As before, more than negligence is required to hold a defendant liable for violating either

---

[12] [A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'"  *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)).

constitutional provision. *Id*. at 36.

Here, Constantine alleges in the Sixth and Tenth Causes of Action that her "mental health requests for transgender (gender Identity)" were denied. Am. Compl. at 5, 8. Plaintiff further alleges that she was "told by the facility that she would not be getting an[y] mental health services." *Id*. at 6, 8. No other facts are alleged.

Upon review, and assuming that Constantine's mental health needs were "sufficiently serious," the allegations that evaluation and treatment were improperly denied are entirely conclusory, asserted against unidentified and undifferentiated "defendants" (none of whom are identified as medical providers) and, therefore, are not sufficient to plausibly suggest "objective recklessness" by one or more individuals personally involved in and responsible for plaintiff's medical and/or mental health care at RCJ.[13]

Sweeping assertions of wrongdoing do not suffice. The law in the Second Circuit clearly provides that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). Based upon the foregoing, plaintiff's claims that she was denied mental health care (asserted in the Sixth and Tenth Causes of Action) are dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### g. Access to the Courts

"A prisoner has a constitutional right of access to the courts for the purpose of

---

[13] The Court has also considered whether a *Monell* claim has been properly asserted against Rensselaer County and concludes that it has not.

presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986) (citing *Bounds v. Smith*, 430 U.S. 817, 821-23 (1977)).

An inmate alleging a denial of access to courts must show "actual injury" as a result of the deficient access to the courts; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1995).  Furthermore, in a claim for violation of the constitutional right of access to the courts, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint . . ." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, Constantine alleges that on June 15, 2017, C.O. Weaver improperly denied plaintiff her scheduled telephone call with her attorney, and alter denied her access to the shower.  Am. Compl. at 7.[14]  Plaintiff further alleges that C.O. Weaver's action was unjustified and intended only to harass her.  *Id*.

Upon review, and even assuming that C.O. Weaver acted with the requisite state of mind, the amended complaint does not set forth factual allegations sufficient to plausibly suggest that the denial of a single telephone call with her attorney "prejudiced [plaintiff's] ability to seek redress from the judicial system." *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995); *see also Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").  In addition, for the reasons discussed above, the harassment alleged, without more, is not constitutionally significant.

---

[14]  The amended complaint does not identify the attorney or provide any information regarding the legal proceeding to which the call related.

Based upon the foregoing, Constantine's First and Fourteenth Amendment claims against C.O. Weaver (asserted in the Ninth Cause of Action) are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### h. **False Reports and Retaliation**

An inmate does not enjoy a protected constitutional right "to be free from false and inaccurate information" in her prison records.  The creation of a false report in a prisoner's file is not, on its own, a due process violation.  *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report").  Rather, there must be more, such as retaliation against the prisoner for exercising a constitutional right.  *Id*. (citing *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988)).

 The Second Circuit has long instructed that because virtually any adverse action taken against a prisoner by a prison official can be characterized as a constitutionally proscribed retaliatory act, courts must "examine prisoners' claims of retaliation with skepticism and particular care."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following:  (1) the speech or conduct at issue was "protected;" (2) the defendant took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist.*

22

*Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

Here, Constantine alleges that on June 26, 2017, Lt. Sauer wrote a misbehavior report in retaliation for plaintiff having filed a grievance regarding the denial of her telephone call with her attorney on June 15, 2017.  Am. Compl. at 8.  Plaintiff states that the misbehavior report was issued on the same day that Lt. Sauer learned that plaintiff had commenced this action naming her as a defendant.  *Id*.  Plaintiff claims that Lt. Sauer was motivated by retaliatory animus.  *Id*.  Upon review and with due regard for plaintiff's status as a pro se litigant, a response to plaintiff's First Amendment retaliation claim (set forth in the Ninth Cause of Action) will be required from Lt. Sauer.

## IV. <u>APPOINTMENT OF COUNSEL</u>

Courts cannot use a bright-line test in determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin,* 114 F.3d 390, 392-93 (2d Cir. 1997).  As the Second Circuit stated in *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir. 1986), "the district judge should first determine whether the indigent's position seems likely to be of substance."  *Id.* at 61.

If the claim satisfies that threshold requirement, a number of factors must be carefully considered by the court in ruling upon such a motion.  Among these factors are:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge*, 802

F.2d at 61-62).  This is not to say that all, or indeed any, of these factors are controlling in a particular case.  Rather, each case must be decided on its own facts.  *Velasquez v. O'Keefe,* 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge,* 802 F.2d at 61).

At this very early stage of the litigation, it is difficult to assess the likely merits of Constantine's claims.  Moreover, it is noted that there is nothing in the record which demonstrates that plaintiff is not able to effectively pursue this action.  While it is possible that there will be conflicting evidence implicating the need for cross-examination if this case proceeds to trial, "this factor alone is not determinative of a motion for appointment of counsel."  *Velasquez,* 899 F. Supp. at 974 (citing *Hodge,* 802 F.2d at 61).  Further, if this case survives a dispositive motion filed by defendants, it is highly probable that trial counsel will be appointed at the final pretrial conference.  Finally, the record reflects no special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

As a result, plaintiff's motion for appointment of counsel (Dkt. No. 3) is denied without prejudice to renew at a later stage in the proceeding.

## V.  CONCLUSION

Therefore, it is

ORDERED that

1.  Plaintiff's IFP Application (Dkt. No. 7) is **GRANTED**;[15]

2.  The Clerk of the Court shall provide the superintendent of the facility designated by plaintiff as her current location with a copy of plaintiff's inmate authorization form (Dkt. No.

---

[15]  Although plaintiff's in forma pauperis application has been granted, plaintiff will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

10), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915;

3.   The Clerk of the Court shall further provide a copy of plaintiff's inmate authorization form (Dkt. No. 10) to the Financial Deputy of the Clerk's Office;

4.   The following claims **SURVIVE** the Court's initial review and require a response:  (i) Fourteenth Amendment claims against C.O. Sinde, C.O. Weaver, and C.O. Economeldes arising from the disclosure of plaintiff's confidential medical information (set forth in the Second Cause of Action); (ii) ADA claims against Rensselaer County arising from the denial of an interpreter (set forth in the Third Cause of Action); and (iii) First Amendment retaliation claims against Lt. Sauer arising from the issuance of a false misbehavior report (set forth in the Ninth Cause of Action);

5.   Plaintiff's claims against RCJ, as well as all claims asserted pursuant to HIPAA are **DISMISSED with prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1);

6.   Plaintiff's remaining claims are **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1);[16]

7.   The Clerk of the Court shall terminate RCJ, Sgt. Bulnes, Sgt. Morin, Sgt. Bates, Sgt. Gesewicz, Sgt. Machina, Sgt. Hoggle, C.O. Kelly, Sgt. Randell, C.O. Simmons, C.O.

---

[16]   Should plaintiff seek to pursue one or more of the claims dismissed without prejudice by the Court herein, she must file a motion to amend supported by a proposed amended complaint.  Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction.  Any amended complaint must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

Dillenbeck; John/Jane Does 1-15, Chief Hetman, Sheriff Ruso, Lt. Rekin, Capt. Dunham, and Undersheriff Bly as defendants in this action;

8.  The Clerk of the Court shall issue summonses and forward them to the U.S. Marshal for service of process upon defendants C.O. Sinde, C.O. Weaver, C.O. Economeldes, Lt. Sauer, and Rensselaer County;

9.  The Clerk of the Court shall forward a copy of the summons and amended complaint by mail to the Office of the Rensselaer County Attorney, together with a copy of this Decision and Order;

10.  A response to the amended complaint shall be filed by these defendants or their counsel as provided for in the Federal Rules of Civil Procedure;

11.  Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED without prejudice** to renew at a later stage in the proceeding;

12.  All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

13.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action;

14.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court;

15.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties**

**or their counsel, in writing, of any change in her address; her failure to do so will**

**result in the dismissal of this action**; and

      16.  The Clerk shall serve a copy of this Decision and Order on plaintiff.

      IT IS SO ORDERED.


Dated:  October 17, 2017
          Utica, New York.

_____
United States District Judge